**CV11-** **3642**

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

IN CLERKS OFFICE
U.S. DISTRICT COURT E.D.N.Y.

SEP 2 3 2004

*BROOKLYN OFFICE*

| | |
|---|---|
| UNITED STATES OF AMERICA *ex. rel.* DEREK LYON, TINA CROWLEY, JESSICA COLON and ANNE MARIE BELLATTO, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN MEDICAL RESPONSE, LAIDLAW INTERNATIONAL INC., PARK AMBULANCE SVC, ASSOCIATED AMBULANCE SERVICE, INC. and PHIL CRIMALDI, <br><br> Defendants. | Civil Action No. <br> **FALSE CLAIMS ACT** **04** **4119** <br> **COMPLAINT AND DEMAND** **FOR JURY TRIAL** <br><br> **FILED UNDER SEAL** **PURSUANT TO** **31 U.S.C. § 3730(b)(2)** <br><br> **DO NOT PLACE IN PRESS BOX** **DO NOT ENTER ON DOCKET** |

ROSS, J.

CARTER, M.J.

## INTRODUCTION

1.    Derek Lyon ("Lyon"), Tina Crowley ("Crowley"), Jessica Colon ("Colon") and Anne Marie Bellatto ("Bellatto"), ("relators") bring this action on behalf of the United States of America against defendant for treble damages and civil penalties arising from defendants' false statements and false claims in violation of the Civil False Claims Act, 31 U.S.C. §§ 3729 *et. seq.* The violations arise out of false certifications of medical necessity, false reporting in Pre-Hospital Care Reports, billing for services not rendered by defendants and upcoding of medical services rendered by Defendants.

2.    As required under the False Claims Act, 31 U.S.C. § 3730(b)(2), the relators have provided to the Attorney General of the United States and to the United States Attorney for the Eastern District of New York a statement of all material evidence and information related to the complaint. This disclosure statement is supported by material evidence known to relators at their filing establishing the existence of

defendants' false claims. Because the statement includes attorney-client communications and work product of relators' attorneys, and is submitted to the Attorney General and United States Attorney in their capacity as potential co-counsel in the litigation, the relators understand this disclosure to be confidential.

## PARTIES

3.      Relator Derek Lyon is a citizen of the State of New York and is domiciled in New York, New York. He was employed by AMR and/or defendants.

4.      Relator Tina Crowley is a citizen of the State of New York and is domiciled in Queens, New York. She was employed by AMR and/or defendants.

5.      Relator Jessica Colon is a citizen of the State of New York and is domiciled in New York, New York. She was employed by AMR and/or defendants.

6.      Relator Anne Marie Bellatto is a citizen of the State of New York and is domiciled in Queens, New York. She was employed by AMR and/or defendants.

7.      Relators are the original source of the facts and information hereinafter set forth concerning the activities of the defendant. The facts averred herein are based entirely upon their direct, independent and personal knowledge and observation, documents in their possession, investigation performed by them and on their behalf and upon information and belief. Although some of the information provided by the relators is duplicative between them, each individual relator provides original facts and information that is solely in his or her possession to the exclusion of the other relators.

8.      Defendant American Medical Response ("AMR") was and is a Delaware corporation having its principal place of business at 6200 South Syracuse Way, Suite 200, Greenwood Village, Colorado 80111. AMR's principal place of business in New

York is 930 Flushing Avenue, Brooklyn, New York 11206. AMR's Eastern Region Headquarters is located at 55 Church Street, New Haven, Connecticut 06510. AMR employees, paramedics, emergency medical technicians, nurses, doctors and support staff, are in the primary business of providing emergency and non-emergency medical transport.

9.     Defendant Laidlaw International, Inc. ("Laidlaw") was and is a Delaware corporation having its principal place of business at 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604-1101. Laidlaw, a publicly traded company, is a holding company for North America's largest providers of school and inter-city bus transport, patient transportation, emergency department and public transit services, including AMR.

10.     Defendant Park Ambulance Svc a/k/a Park Ambulance Service ("Park") is a DBA of AMR having its principal place of business at 78 Ingraham Street, Brooklyn, New York 11237-1406 and/or 930 Flushing Avenue, Brooklyn, New York 11206.

11.     Defendant Associated Ambulance Service, Inc. ("AAS") is a DBA as AMR having its principal place of business at 78 Ingraham Street, Brooklyn, New York 11237-1406 and/or 930 Flushing Avenue, Brooklyn, New York 11206.

12.     Phil Crimaldi ("Crimaldi") is the Manager and a Principal of Park. Crimaldi is a Vice President of AMR. Crimaldi is a Vice President of AAS.

## JURISDICTION

13.     This action arises under the False Claims Act, 31 U.S.C. §§ 3729 *et. seq.* This Court has jurisdiction over this case pursuant to 31 U.S.C. §§ 3732(a) and 3730(b). This Court also has jurisdiction pursuant to 28 U.S.C. § 1345 and 28 U.S.C. § 1331.

14. Venue is appropriate in this District pursuant to 31 U.S.C. § 3732(a), because the acts proscribed by 31 U.S.C. §§ 3729 *et. seq.* and complained of herein took place in this district, and is also proper pursuant to 28 U.S.C. § 1391(b) and (c), because at all times material and relevant, defendants transact and transacted business in this District, defendants local office for business in this District and the majority of events giving rise to the claims asserted herein occurred in this District.

## FACTS COMMON TO ALL COUNTS

15. The relators have prepared, and will serve with this complaint on the Attorney General and United States Attorney for the Eastern District of New York, a disclosure pursuant to 31 U.S.C. § 3730(2) of information in their possession and of which they are the original source.

## DEFENDANTS SCHEMED TO INCREASE REVENUES THROUGH SYSTEMATIC UPCODING
### *Upcoding Basic Life Support to Advanced Life Support*

16. Commencing on or about October 2002 and continuing through the present, Defendants' knowingly engaged in a common scheme to defraud Medicare by upcoding Basic Life Support ("BLS") to Advanced Life Support ("ALS") ambulance calls, which bill at a substantially higher rate.

17. As part of this scheme Defendants required that all Patient Care Reports ("PCRs") were to be written by the paramedic member of the ambulance crew, who alone could provide ALS medical service, whether or not the paramedic provided service to the patient, so that Medicare could be billed for ALS.

18. Crimaldi instructed paramedics and EMTs that only paramedics were to do the paperwork on PCRs for billing purposes.

19. Defendants' management, including Crimaldi instructed paramedics and EMTs "that if it is a BLS call, you are to write ALS assessment performed, BLS transport" whether in fact there was a medical necessity for an ALS assessment or whether in fact an ALS assessment was performed.

20. EMTs and paramedics were instructed that paramedics were to write on every ambulance call, "ALS assessment performed" whether in fact there was a need for an ALS assessment and/or whether in fact an ALS assessment was performed.

21. Even if the call was "BLS," paramedics and EMTs were instructed that their paperwork should state that an ALS exam was performed.

22. In this regard Crimaldi stated: "If its an ALS call, but patient doesn't require ALS, give them ALS."

23. Since Defendants required paramedics to upcode BLS calls to ALS calls by requiring that paramedics, rather than EMTs, write the paperwork and state that an ALS assessment was performed, whether in fact there was a medical necessity for such an assessment or whether in fact such an assessment was performed, Defendants knowingly made multiple false claims to Medicare/Medicaid for ALS service when in fact the service was, or should have, been BLS. Consequently, each claim for reimbursement submitted by defendants involving upcoding from BLS to ALS when transporting Medicare (Medicaid) patients constitutes a False Claim within the meaning of 31 U.S.C. § 3729.

### Upcoding Ambulette Service to Basic Life Support

25. Commencing on or about October 2002 and continuing through the present, Defendants knowingly engaged in a common scheme to defraud

Medicare/Medicaid by upcoding Ambulette calls ("Ambulette") to Basic Life Support ("BLS") calls, which bill at a substantially higher rate, and which Medicare (Medicaid) reimbursed.

26.     Defendants' management, including Crimaldi instructed paramedics and EMTs "that if it is an Ambulette call, you are to write BLS performed, BLS transport" whether in fact there was a medical necessity for BLS or whether in fact BLS was performed.

27.     EMTs and paramedics were instructed that paramedics were to write on every Ambulette call, "BLS" whether in fact there was a need for BLS assessment and/or whether in fact BLS was performed.

28.     Even if the call was "Ambulette," paramedics and EMTs were instructed that their paperwork should state that BLS was performed.

29.     Because Defendants required paramedics to upcode Ambulette calls to BLS, whether in fact there was a medical necessity for BLS or whether in fact BLS was performed, Defendants knowingly made multiple false claims to Medicare/Medicaid for BLS service when in fact the service was, or should have been Ambulette.  Consequently, each claim for reimbursement submitted by defendants involving upcoding from Ambulette to BLS when transporting Medicare (Medicaid) patients constitutes a False Claim within the meaning of 31 U.S.C. § 3729.

### Altering Documents to Show Medical Necessity

30.     Defendants knowingly engaged in a fraudulent scheme to downgrade the medical status of patients by requiring their employees to falsely record on PCRs and

other documents untruthful and inaccurate patient observations to demonstrate medical necessity for upcoded ambulance services and procedures.

31.    Paramedics and EMTs were instructed by Defendants' management, including Crimaldi, to not truthfully and accurately record their observations of their patients status upon their arrival at the patient's facility.

32.    Defendants' ambulance personnel were instructed and required by Crimaldi to never write on the PCR or other documents that the patient was found walking, able to ambulate, standing, sitting in a chair or sitting in a wheelchair.

33.    Crimaldi instructed and required that documents written by ambulance personnel should state: "patient found bed confined."

34.    EMTs and Paramedics who truthfully and accurately recorded their observations of finding a patient walking, able to ambulate, standing, sitting in a chair or sitting in a wheelchair, were subject to being penalized by defendants.

35.    In order to justify ALS services, on multiple occasions, paramedics altered PCRs by decreasing a patient's Glascow Coma Scale score (GCS) on the PCR or by attaching to the PCR, EKG strips from another patient or from themselves, with full knowledge and encouragement of management

36.    As part of their fraudulent billing scheme, Defendants' personnel, with knowledge of management, routinely forged the signature of medical personnel who allegedly attested to the need for various ambulance services and procedures on the Physician Certification Statement ("PCS")- Medical Necessity Certification.

37.    As part of their fraudulent billing scheme, Defendants' personnel, with knowledge of management routinely submitted via facsimile multiple unsigned PCSs to

various hospitals, including Lenox Hill Hospital in New York, which had already been filled out by Defendants' personnel, who attested to the need for various ambulance services and procedures, which were signed off by hospital personnel and faxed back to Defendants.

38.    On multiple occasions from October 2002 to the present, Defendants' personnel, with full knowledge of management, forged signatures of health care providers on the PCS statement.

39.    On multiple occasions from October 2002 to the present, Defendants' personnel, with full knowledge of management recorded on PCSs, the documentation of medical necessity for ambulance services and procedures; even though they knew that health care providers from the transporting facility were the only personnel who could attest to medical necessity.

40.    Crimaldi instructed and required that if personnel did not obtain a signature for medical necessity of ambulance service as contained on the PCS, they were to sign the PCS themselves.

41.    Geraldine Aronowfsky ("Gerry") the Communications Manager for Defendants instructed and required personnel to alter PCSs to support medical necessity for services. Additionally, she instructed and required ambulance crews to alter PCRs to justify the ambulance services and procedures provided and billed for.

42.    On almost a daily basis from October 2002 to the present, Gerry, Artie Becker and others would forge signatures on PCSs and PCRs.

43.     On an almost weekly basis, Gerry would require that relator Jessica Colon alter PCSs or PCRs or change diagnoses for "chief complaint" on a PCR when it didn't match with the PCS.

44.     On multiple occasions from October 2002 to the present Jerry, Crimaldi and Gino Farnham, Operations Supervisor, would alter ("fix") the documentation of medical necessity on multiple PCSs.

45.     Based upon the above, each of the above claims for reimbursement submitted to Medicare/Medicaid by Defendants for BLS and ALS services constitutes a False Claim within the meaning of 31 U.S.C. § 3729.

### The Cost to Medicare (Medicaid) Of Defendants' Fraudulent Scheme To Increase Revenues Through Systematic Upcoding

46.     Defendants are the largest provider of emergency and non-emergency medical transport in the United States, including New York and other States in the Northeast.

47.     Defendants knowingly submitted or caused to be submitted to Medicare (Medicaid) the aforementioned false claims, which were relied upon by Medicare (Medicaid) in making payment to Defendants for a significant portion of their claims regarding thousands of beneficiaries.

48.     Additional facts are within Defendants' control, including the PCRs, PCS's, medical bills and other records of thousands of patients who were transported by Defendant from at least on or about October 2002 through the present and who were Medicare (Medicaid) beneficiaries along with certifications of medical necessity and other proofs of claim submitted to Medicare (Medicaid) and records of payment.

49.     Based upon the information available, the approximate cost of Defendants' False Claims to Medicare (Medicaid) cannot be stated with precision but considering the widespread nature of Defendants' scheme and the large scale of Defendants' business in New York and elsewhere, the cost is estimated to be many millions of dollars.[1]

## DEFENDANTS SCHEMED TO INCREASE REVENUES BY PROVIDING UNNECESSARY SPECIALTY CARE TRANSPORT

50.     Defendants knowingly engaged in a fraudulent scheme to provide unnecessary Specialty Care Transport ("SCT") by transporting patients from hospitals in New Jersey to Lenox Hill Hospital in New York, New York, to undergo services that were available at the originating hospital or a closer hospital than Lenox Hill Hospital.

51.     Paramedics and EMTs were instructed by Defendants' management, including Crimaldi, to transport patients from hospitals in New Jersey to Lenox Hill Hospital in New York, New York, to undergo services that were available at the originating hospital or a closer hospital than Lenox Hill Hospital.

52.     Defendants failed to contract or employ a registered nurse to provide the ALS component of the aforementioned SCT, when it was required.

53.     As part of their fraudulent scheme to provide unnecessary SCT, Defendants' personnel, with knowledge of management, routinely submitted false documentation attesting to the need for SCT.

---

[1] In addition, the FCA allows for substantial penalties for each false claim submitted to Medicare, and some of the other violations committed by defendants, as alleged herein, also provide for substantial penalties.

54.     On multiple occasions from October 2002 to the present, Defendants'
personnel, with full knowledge of management filled in on PCSs, the documentation of
medical necessity for SCT.

55.     Based upon the above, each of the above claims for reimbursement
submitted to Medicare/Medicaid by Defendants for SCT services between hospitals in
New Jersey and Lenox Hill Hospital constitutes a False Claim within the meaning of 31
U.S.C. § 3729.

### The Cost to Medicare (Medicaid) Of Defendants' Fraudulent Scheme To Increase Revenues By Providing Unnecessary Specialty Care Transport

56.     Defendants knowingly submitted or caused to be submitted to Medicare
(Medicaid) the aforementioned false claims, which were relied upon by Medicare
(Medicaid) in making payment to Defendants for a significant portion of their claims
regarding hundreds or even thousands of beneficiaries.

57.     Additional facts are within Defendants' control, including the PCRs,
PCS's, medical bills and other records of the patients who were transported by
Defendants from at least on or about October 2002 through the present and who were
Medicare (Medicaid) beneficiaries along with certifications of medical necessity and
other proofs of claim submitted to Medicare (Medicaid) and records of payment.

58.     Based upon the information available, the approximate cost of
Defendants' False Claims to Medicare (Medicaid) cannot be stated with precision but
considering the widespread nature of Defendants' scheme and the large scale of

Defendants' business in New York and elsewhere, the cost is estimated to be many millions of dollars.[2]

## GENERAL ALLEGATIONS

59.     Defendants used and employed paramedics, emergency medical technicians, administrative staff and other staff (including Relators), who were authorized, supervised, controlled and directed by Defendants to provide emergency and non-emergency medical transport services.

60.     At all times mentioned herein, Defendants, including AMR, held themselves out as meeting all of the conditions for participation in Medicare (Medicaid), and did, in fact, bill and receive payment from Medicare (Medicaid) for medical care, treatment, services, evaluation and assistance rendered.

## COUNT I
### *(Medicare [Medicaid] Fraud)*

61.     Plaintiffs hereby repeat and reallege the allegations contained in paragraphs 1-60 as if set forth fully herein.

62.     Defendants entered into a scheme, including the location of Brooklyn, New York, in approximately 2002 through the present, in order to enrich themselves at the expense of Medicare (Medicaid) and other health care providers and carriers.

63.     In furtherance of their scheme, Defendant utilized their position and status as a medical transport company providing healthcare to the public, who was legally, ethically and morally obligated to act in the best interests of their patients.

---

[2] In addition, the FCA allows for substantial penalties for each false claim submitted to Medicare, and some of the other violations committed by defendants, as alleged herein, also provide for substantial penalties.

64. In furtherance of their scheme Defendants from at least year 2002 continuing through the present, through their practices described herein, intentionally and/or knowingly deceived Medicare (Medicaid), regarding the level of the transport and medical care they providing to maximize the amount of the reimbursement they would receive from Medicare (Medicaid).

65. Defendants knew the representations made to Medicare (Medicaid) were false, misleading and deceptive, containing materially false statements and omitting material information, having been intentionally designed by or on behalf of Defendants to cause Medicare/Medicaid to pay for treatment not actually provided by Defendants or for treatment that was not medically necessary.

66. In furtherance of their scheme Defendants intentionally and/or knowingly disseminated false, misleading and deceptive information to Medicare/Medicaid, with the intent of deceiving Medicare/Medicaid, and inducing Medicare/Medicaid to pay for treatment not actually provided by Defendants or that was not medically necessary.

### *Medicare (Medicaid) Fraud*

67. As a result of defendants' knowing and/or intentional upcoding, and forging and falsifying of PCRs and PCSs to show medical necessity, Medicare (Medicaid) was deceived by Defendants into reimbursing Defendants for services that were not performed or that were not medically necessary.

68. Defendant knowingly and/or intentionally submitted the upcoded and/or forged and/or falsified documentation to Medicare (Medicaid) beneficiaries, knowing that the transport and/or treatment was not provided and/or not medically necessary or reasonable.

69. As a result of Defendants' aforementioned knowing and/or intentional submission of the upcoded and/or forged and/or falsified documentation, Defendants wrongfully received payment from Medicare (Medicaid) for services they did not provide and/or were not medically necessary or reasonable.

70. As a result of defendants' aforementioned knowing and/or intentional conduct, Defendants were unjustly enriched at the expense of Medicare (Medicaid) and other carriers.

71. Through their aforementioned conduct, Defendants conspired and committed fraud upon the public, Medicare (Medicaid) and other insurance companies.

72. Through their aforementioned conduct, Defendants caused Medicare (Medicaid) to rely upon Defendants' representations and pay Defendants' claims for services, thereby violating False Claims Act, 31 U.S.C. §§ 3729 *et. seq.*

### *COUNT II*
*(Violation of Medicare [Medicaid] and Other Insurance Regulations and Violation of Title XVIII of the Social Security Act, section 1862(a)(1)(A))*

73. Plaintiffs hereby repeat and reallege the allegations contained in paragraphs 1-72 as if set forth fully herein.

74. A significant percentage of patients who utilize Defendants' services are persons whose medical bills are paid for in whole or in part by state administered medical assistance programs, which receive 90% reimbursement from the federal government, to wit, Medicare (Medicaid).

75. Under the statutes and regulations establishing the Medicare (Medicaid) programs, the individual states are permitted to establish review boards and formularies,

which define medical treatment for which state agencies will make reimbursement under their Medicare (Medicaid) programs.

76.     The Medicare (Medicaid) programs of the Federal government include detailed provisions, by statute and regulation, concerning reimbursement for ground ambulance services, including ALS services, BLS services and Specialty Care Transport,[3] requirements to qualify for reimbursement for each of these services, requirements to show the medical necessity for each of these services, and limitations on the use of each of these services. These laws and regulations include, *inter alia*, applicable New York State Medicare (Medicaid) Local Medical Review Policy as set forth in the Medicare (Medicaid) Carrier's Manual.

77.     Based upon the aforementioned indications and limitations, many of the transports administered by Defendants were wrongly billed as Advanced Life Support, when in fact they were Basic Life Support, thereby causing Medicare (Medicaid) to overpay for those transports.

78.     Based upon the aforementioned indications and limitations, many of the transports administered by Defendants were wrongly billed as Basic Life Support, when in fact they were Ambulette, thereby causing Medicare (Medicaid) to overpay for those transports.

79.     Based upon the above, the aforementioned Specialty Care Transports by Defendants from New Jersey hospitals to Lenox Hill Hospital in New York were not allowed, thereby causing Medicare (Medicaid) to pay for transports it should not have paid for.

---

[3] Ambulette service is specifically not reimbursable under the Ambulance Coverage Guidelines, but is covered elsewhere. The rate for Ambulette service, particularly compared to BLS or ALS, is very low.

80.     Defendants have engaged in an illegal scheme and/or conspiracy in their method of billing and/or obtaining reimbursement from Medicare (Medicaid), inducing Federal payments through a pattern of fraudulent conduct by causing the State of New York, and thus the Federal government, to pay out sums for services they did not intend to pay for, thereby violating False Claims Act, 31 U.S.C. §§ 3729 *et. seq.*

### COUNT III
*(Frustation of Federal Policy)*

81.     Plaintiffs hereby repeat and reallege the allegations contained in paragraphs 1-80 as if set forth fully herein.

82.     All of the conduct referred to above, to wit, violating of Medicare (Medicaid) and other insurance regulations, as well as Title XVIII of the Social Security Act, sections 1862(a)(1)(A) and *1320a-7a(a)(5)*, are substantial and deliberate frustrations of clear Federal law, regulation, and policy concerning the promotion and sale of medical services.

83.     Defendants have sold millions of dollars of medical services knowing that such sales were directly or indirectly paid for by the Federal government, and knowing that such sales represented a direct frustration and violation of Federal law, regulation and policy, and knowing that the Federal government was paying for services it did not intend to pay for, as a result of Defendants' schemes. Defendants' overall pattern of conduct aimed at avoiding Federal law while inducing the payment of Federal funds was a pattern of fraud to induce Federal payments and constitutes a False Claim within the meaning of 31 U.S.C. § 3729.

## COUNT IV
### *(Derek Lyon - Retaliation in Violation of 31 U.S.C. § 3730(h))*

84.    Plaintiffs hereby repeat and reallege the allegations contained in paragraphs 1-83 as if set forth fully herein.

85.    During the period beginning on or about October 2002 to the present, *qui tam* plaintiff Derek Lyon was harassed and demoted in his employment with Defendants, and was ultimately terminated by Defendants as a result of his lawful acts in furtherance of this action, including questions to a corporate official, as encouraged under Defendants' corporate policy guidelines regarding the false claims herein. This harassment, demotion and ultimate termination was in violation of 31 U.S.C. § 3730(h).

86.    As a direct and proximate result of this unlawful and discriminatory harassment, demotion and ultimate termination, *qui tam* plaintiff Derek Lyon has suffered emotional pain and mental anguish, together with serious economic hardship, including lost wages and special damages associated with his efforts to obtain alternative employment, in an amount to be proven at trial.

## COUNT V
### *(Tina Crowley - Retaliation in Violation of 31 U.S.C. § 3730(h))*

87.    Plaintiffs hereby repeat and reallege the allegations contained in paragraphs 1-86 as if set forth fully herein.

88.    During the period beginning on or about January 2004 to the present, *qui tam* plaintiff Tina Crowley was harassed in her employment, and was ultimately terminated by Defendants as a result of her lawful acts in furtherance of this action, including speaking with Derek Lyons about the activity engaged in by Defendants as

Case 1:11-cv-03642-ARR-ALC   Document 1   Filed 07/28/11   Page 18 of 24 PageID #: 18
Case 1:04-cv-04119-ARR-RLM  SEALED*  Document 1   Filed 09/23/04   Page 18 of 21 PageID
#: 18

described herein. This harassment and ultimate termination was in violation of 31 U.S.C. § 3730(h).

89.     As a direct and proximate result of this unlawful and discriminatory harassment and ultimate termination, *qui tam* plaintiff Tina Crowley has suffered emotional pain and mental anguish, together with serious economic hardship, including lost wages and special damages associated with her efforts to obtain alternative employment, in an amount to be proven at trial.

## COUNT VI
*(Jessica Colon - Retaliation in Violation of 31 U.S.C. § 3730(h))*

90.     Plaintiffs hereby repeat and reallege the allegations contained in paragraphs 1-89 as if set forth fully herein.

91.     During the period beginning on or about October 2002 to the present, *qui tam* plaintiff Jessica Colon was harassed and demoted in her employment, and was ultimately terminated by Defendants as a result of her lawful acts in furtherance of this action. This harassment, demotion and ultimate termination was in violation of 31 U.S.C. § 3730(h).

92.     As a direct and proximate result of this unlawful and discriminatory harassment, demotion and ultimate termination, *qui tam* plaintiff Jessica Colon has suffered emotional pain and mental anguish, together with serious economic hardship, including lost wages and special damages associated with her efforts to obtain alternative employment, in an amount to be proven at trial.

## COUNT VII

*(Anne Marie Bellatto - Retaliation in Violation of 31 U.S.C. § 3730(h))*

93.     Plaintiffs hereby repeat and reallege the allegations contained in paragraphs 1-92 as if set forth fully herein.

94.     During the period beginning on or about October 2002 to the present, *qui tam* plaintiff Anne Marie Bellatto was harassed and demoted in her employment, and was ultimately terminated by Defendants as a result of her lawful acts in furtherance of this action. This harassment, demotion and ultimate termination was in violation of 31 U.S.C. § 3730(h).

95.     As a direct and proximate result of this unlawful and discriminatory harassment, demotion and ultimate termination, *qui tam* plaintiff Anne Marie Bellatto has suffered emotional pain and mental anguish, together with serious economic hardship, including lost wages and special damages associated with her efforts to obtain alternative employment, in an amount to be proven at trial.

**WHEREFORE,** relators respectfully request that this Court enter judgment against defendants as follows:

(a)     That the U.S. be awarded damages in the amount of three times the damages sustained by the U.S. because of the false claims and fraud alleged within this Complaint, as the Civil False Claims Act, 31 U.S.C. §§ 3729 *et. seq.* provides;

(b)     That civil penalties of $11,000 be imposed for each and every false claim that Defendants presented to the U.S. and/or their grantees;

(c)  That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the relators necessarily incurred in bringing and pressing this case;

(d)  That the Court grant permanent injunctive relief to prevent any recurrence of the False Claims Act for which redress is sought in this Complaint;

(e)  That relator, Derek Lyon, be granted all relief necessary to make him whole, including but not limited to two times his back pay and other compensatory damages sustained as a result of Defendants' harassment and retaliation;

(f)  That relator, Tina Crowley, be granted all relief necessary to make her whole, including but not limited to two times her back pay and other compensatory damages sustained as a result of Defendants' harassment and retaliation;

(g)  That relator, Jessica Colon, be granted all relief necessary to make her whole, including but not limited to two times her back pay and other compensatory damages sustained as a result of Defendants harassment and retaliation;

(h)  That relator, Anne Marie Bellatto, be granted all relief necessary to make her whole, including but not limited to two times her back pay and other compensatory damages sustained as a result of Defendants' harassment and retaliation;

(i)  The relators be awarded the maximum amount allowed to them pursuant to the False Claims Act; and

    (j)    That this Court award such other and further relief as it deems proper.

## DEMAND FOR JURY TRIAL

    Relators, on behalf of themselves and the United States, demand a jury trial on all claims alleged herein.

Dated: New York, New York
      September 22, 2004

                      LIFFLANDER, REICH & SMITH LLP

                      By: _____
                        Richard I. Reich (RIR-7522)
                        Kent B. Dolan (KBD-6573)

                      *Attorneys for Plaintiffs*
                      1221 Avenue of the Americas
                      New York, New York 10020-1089
                      (212) 332-8830 (Reich)

JS 44 (Rev. 3/99)

## CIVIL COVER SHEET

**FILED**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS** United States of America ex. rel. Derek Lyon, Tim Crowley, Jessica Colon and Anne Marie Bellotto,

**DEFENDANTS** American Medical Response, Laidlaw International Inc., Park Ambulette Operated Ambulance Service, Inc. and Phil Crimaldi,

SEP 23 2004

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed _____ Kings, New York
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Liebmann Resch & Smith LLP
1111 Avenue of the Americas
New York, NY 10020-1089   212. 332. 8830

Attorneys (If Known)

**04   4119**

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | | |
|---|---|---|
| ☒ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) | |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) | |

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff (For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury— | of Property 21 USC 881 | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| Judgment | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 151 Medicare Act | Liability | Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 152 Recovery of Defaulted | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| Student Loans | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| (Excl. Veterans) | Liability | ☐ 371 Truth in Lending | | | ☐ 875 Customer Challenge |
| ☐ 153 Recovery of Overpayment | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | **SOCIAL SECURITY** | 12 USC 3410 |
| of Veteran's Benefits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 160 Stockholders' Suits | Product Liability | ☐ 385 Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | | or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | ☒ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | Security Act | 26 USC 7609 | 31 U.S.C. §§3729 et.seq. |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

### V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judgment |

### VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

31 U.S.C. §§3729 et. seq = False Claims Act

### VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION DEMAND
UNDER F.R.C.P. 23

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

### VIII. RELATED CASE(S) IF ANY

(See instructions):
JUDGE _____ DOCKET NUMBER _____

DATE  9-22-04     SIGNATURE OF ATTORNEY OF RECORD  _____ 7522(HR)

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE Ross  MAG. JUDGE Mann

4119

I, _Richard Kost_, counsel for _Plaintiffs_
do hereby certify pursuant to the Local Arbitration Rule 83.10 that to the best of
my knowledge and belief the damages recoverable in the above captioned civil action exceed the
sum of $150,000 exclusive of interest and costs.
_____ Relief other than monetary damages is sought.

## DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its
stocks:

Did the cause arise in Nassau or Suffolk County? _No_

If answered yes, please indicate which county. _____ .

County of residence of plaintiff(s)   (1)_____
(2)_____
(3)_____

County of residence of defendant(s)   (1)_____
(2)_____
(3)_____

**I am currently admitted in the Eastern District of New York and currently a member in
good standing of the bar of this court.**

Yes_ ✓_                                    No_____

**Are you currently the subject of any disciplinary action(s) in this or any other state or
federal court?**

Yes_____(If yes, please explain)            No_ ✓_

Please provide your E-MAIL Address and bar code below. Your bar code consists of the initials
of your first and last name and the first four digits of your social security number or any other
four digit number registered by the attorney with the Clerk of Court.
(This information must be provided pursuant to local rule 11.1(b) of the civil rules).
ATTORNEY BAR CODE: _RR 7527_

E-MAIL Address: _RReich@ GriffInnden .com_

I consent to the use of electronic filing procedures adopted by the Court in Administrative Order
No. 97-12, "In re Electronic Filing Procedures(EFP)", and consent to the electronic service of all
papers.
Signature: _____

JS 44 Reverse (Rev. 3/99)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

### Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.      (a) Plaintiffs-Defendants. Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b.) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.     Jurisdiction. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States, are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.    Residence (citizenship) of Principal Parties. This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.     Nature of Suit. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.      Origin. Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a) Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI.     Cause of Action. Report the civil statute directly related to the cause of action and give a brief description of the cause.

VII.    Requested in Complaint. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.   Related Cases. This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

Date and Attorney Signature. Date and sign the civil cover sheet.